IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL FORREST CALHOUN,

                             Civil No. 07-1420-ST

        Petitioner,

    v.

BRIAN BELLEQUE,

                             FINDINGS AND RECOMMENDATIONS

        Respondent.

Steven Wax
Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

        Attorney for Petitioner

John R. Kroger
Attorney General
Summer Gleason
Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

        Attorneys for Respondent

///

     1 - FINDINGS AND RECOMMENDATIONS

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 to challenge the legality of his underlying convictions for Robbery and Kidnapping.  For the reasons that follow, the Petition for Writ of Habeas Corpus (docket #2) should be denied.

## BACKGROUND

In 1995, petitioner and two co-defendants set up a robbery scheme where one co-defendant, Vicki Gannon, posed as a prostitute and engage men in small talk.  At that point, petitioner and another co-defendant dressed as police officers intervened, handcuffed the victim under the pretense of an arrest, and took him to a secluded place to rob him of his belongings.  The police ultimately caught the three accomplices, leading to the revocation of petitioner's parole and six new criminal convictions: three for Robbery in the Second Degree and three for Kidnapping in the Second Degree. Following a jury trial, petitioner was sentenced to 216 months in prison.  Respondent's Exhibit 101.

Petitioner filed a direct appeal, and the Oregon Court of Appeals affirmed without opinion.  *State v. Calhoun*, 147 Or. App. 243, 933 P.2d 986 (1997).  The Oregon Supreme Court denied review, 235 Or. 621, 941 P.2d 1022 (1997), and the United States Supreme Court denied certiorari.  *Calhoun v. Oregon*, 522 U.S. 1127 (1998).

Petitioner next filed for post-conviction relief ("PCR") in Marion County which was denied relief on all claims.  Respondent's

2 - FINDINGS AND RECOMMENDATIONS

Exhibits 142-144.   The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  *Calhoun v. Palmateer*, 210 Or. App. 756, 153 P.3d 178, *rev. denied*, 342 Or. 523, 156 P.3d 69 (2007).

Petitioner filed this federal habeas corpus action on September 24, 2007, and argues the following two grounds for relief:

1.    Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments when counsel who represented petitioner during pre-trial negotiations failed to adequately protect petitioner's rights when he permitted him to make a proffer and provide valuable information to prosecutors without obtaining an adequate plea or proffer agreement and when he reached a plea agreement but did not have the agreement properly concluded in writing.

2.    Petitioner was denied his right to effective assistance of counsel under the Sixth and Fourteenth Amendments when appellate counsel failed to raise on appeal the issue that petitioner was denied his right to a fair trial by an impartial jury and his right to Due Process of Law under the Sixth Amendment when the jury was permitted to see him in shackles.  After the jury had been given the verdict-urging instruction, some members of the jury saw petitioner in shackles.  Thereafter, the jury returned guilty verdicts on the counts that were the subject of the supplemental instructions.   Permitting the jurors to see petitioner in shackles during their deliberations biased them against petitioner violating his right to an impartial jury and Due Process.

Amended Memorandum of Law in Support (docket #29), pp. 33, 34.

Respondent asks the court to deny relief on the Petition because: (1) Ground One was not fairly presented to Oregon's state courts and is now procedurally defaulted; and (2) both claims lack merit.  Because the court concludes that petitioner's Ground One

3 - FINDINGS AND RECOMMENDATIONS

Claims lacks merit, it declines to decide the exhaustion issue. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

## FINDINGS

### I.  Expansion of the Record

As an initial matter, petitioner wishes to expand the record with 16 Petitioner's Exhibits. Respondent objects to the admission of Petitioner's Exhibits 2 through 14.

Where, as here, a prisoner wishes to introduce new evidence in the absence of an evidentiary hearing, the evidentiary hearing requirements of 28 U.S.C. § 2254(e)(2) nevertheless apply. *Holland v. Jackson*, 124 S.Ct. 2736, 2738 (2004); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1241-42 (9th Cir. 2005). Accordingly, if petitioner has failed to develop his claim in the state courts, he may only supplement the record if his claim relies on: (1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or (2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) and (ii). He must also demonstrate that the facts underlying the claim are sufficient to establish by clear and convincing evidence

that no reasonable factfinder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

In this case, petitioner could have developed his Petitioner's Exhibits during the course of his PCR trial, a proceeding developed specifically for such a purpose, because the exhibits all existed at that time.  Petitioner offers no explanation as to why he did not develop the exhibits to support his claims during his state collateral challenge.  As petitioner failed to introduce this evidence during his PCR trial when he was able to do so, he is subject to and cannot meet the strict limitations on evidentiary development set forth in § 2254(e)(2).  Accordingly, the court should not consider the proposed Petitioner's Exhibits 2-14.  For the same reasons, the court should deny petitioner's alternative request for an evidentiary hearing to develop new evidence which he failed to develop in the state courts.  *See Holland*, 542 U.S. at 652 ("whether a state court's decision was unreasonable must be assessed in light of the record the court had before it").

## II. <u>**Standard of Review**</u>

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

Although petitioner argues that the PCR trial court did not provide a reasoned decision as to Ground One, the record clearly shows, as discussed below, that the PCR trial court did, in fact, squarely address the issue of attorney incompetence presented to it.

As a result, the court is not required to conduct an independent review of the record in this case.

## III. Unargued Claims

Respondent has addressed a number of claims in the Petition which petitioner has not supported with any briefing. The court has nevertheless reviewed petitioner's unargued claims on the existing record and determined that they do not entitle him to relief. *See* 28 U.S.C. § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true."); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).

## IV. Ineffective Assistance of Trial Counsel

A total of eight different attorneys represented petitioner during the course of his pretrial, trial, and sentencing proceedings. According to petitioner, pre-trial counsel Bruce Johnson improperly allowed him to meet with and provide valuable information to the State relating to its ongoing aggravated murder investigations of three individuals with whom petitioner was incarcerated while he was awaiting trial. Petitioner claims that his counsel should have brokered a favorable deal on his behalf before allowing him to divulge his valuable information to the State. As a result of his cooperation, he maintains that he was

labeled as a "snitch", attacked in prison, and forced to serve his entire sentence out of state due to concerns for his safety while never being offered any more favorable plea offer than the 82 months originally offered. From petitioner's point of view, by the time he had provided the State with all of his information in the absence of a specific *quid pro quo* agreement, the State was able to simply refuse to provide him with any benefit for his efforts.

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test the Supreme Court has established to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1419 (2009). First, petitioner must show that his lawyer's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. The *Strickland* test applies to cases in which a petitioner asserts

that his counsel was ineffective during the guilty plea process. *Hill v. Lockhart*, 474 U.S. 54, 58-59 (1985).  When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

As here, the claim before the PCR trial court was whether pre-trial counsel was ineffective when he arranged a meeting with the district attorney and the investigating detectives prior to negotiating any agreement for petitioner's cooperation. Respondent's Exhibit 108, p. 3.  The PCR trial court made comprehensive factual findings with respect to this claim:

> 5.  Pre-trial counsel Bruce Johnson was not inadequate for arranging and facilitating a meeting with the district attorney and investigating detectives prior to negotiating an agreement.  The evidence shows that petitioner contacted various deputy district attorneys in an attempt to provide evidence concerning three defendants who were in jail with petitioner awaiting aggravated murder trials. Petitioner offered to testify against each of these defendants in return for a deal in his case. Ultimately, the district attorney's office was not interested in striking a deal with petitioner for his testimony due to his conduct, lack of credibility, and the fact that the information provided was not deemed helpful.  However, because the district attorney's office was originally interested in what petitioner had to say regarding the defendants in question, and because petitioner wished to meet with them in order to provide information in an attempt to strike a deal, counsel cannot be considered inadequate for facilitating such a meeting. Petitioner had to meet with the deputy district attorneys involved in the three murder cases in order for them to determine whether he had valuable information to provide.  Counsel cannot be considered inadequate for petitioner's failure to provide

> information deemed relevant by the district attorney's office, or because the district attorney's office was not willing to call petitioner as a witness or offer him a deal based upon his potential testimony.

Respondent's Exhibit 143, pp. 14-16.

It is clear that petitioner wanted to assist the State in return for a more favorable plea offer. However, the PCR trial court determined that "the district attorney's office was not interested in striking a deal with petitioner for his testimony due to his conduct, lack of credibility, and the fact that the information provided was not deemed helpful." *Id* at 15. Such a finding is entitled to a presumption of correctness because there is no clear and convincing evidence to the contrary.

The issue of a brokered plea deal in exchange for petitioner's cooperation was litigated in the form of a motion to dismiss for prosecutorial misconduct. The State's representatives were clearly interested in hearing the nature of the information petitioner allegedly possessed about the murder cases, but were not willing to commit to any deal until they more fully understood petitioner's information and its value. Trial Transcript, pp. 171, 173, 222. Johnson testified not only that a deal was never reached, but also there was not even "a deal to make a deal." *Id* at 404. According to one of the assistant district attorneys involved in the case, they "[n]ever even got to square one" because petitioner "was offering himself as an informant, basically, to anybody under the

sun" and "his value . . . became severely diminished by that conduct." *Id* at 96-97, 102-105. As petitioner understood, the State's representatives "would speak to me, and if it was helpful that they would help me." *Id* at 485.

Petitioner argues that the PCR trial court's findings regarding the value of his information and the State's willingness to make a deal is irrelevant because his claim is based simply on counsel's failure to negotiate a plea agreement in return for his cooperation. But the PCR trial court determined that the State needed to first understand the nature of the information before it would make a deal with petitioner, a finding which petitioner has not overcome by clear and convincing evidence and which is also supported by the record. In this respect, petitioner cannot prove prejudice because the State would not have negotiated with petitioner without first assessing the value of his information.

Even after discovering the nature of petitioner's information, no evidence is properly before this court that the State ever truly intended to utilize petitioner in any other criminal proceeding or otherwise failed to follow through on a more favorable plea bargain based upon his cooperation. Thus, even accepting the dubious proposition that counsel was obligated to attempt to negotiate a deal without providing the State with an opportunity to fully evaluate the value of the information to be offered, given the limited value of petitioner's information, no evidence demonstrates

that the State would have given him a more favorable plea offer had counsel attempted to negotiate one based upon just a limited disclosure of information.    Indeed, for all of the allegedly valuable information petitioner claims to have given the State, the prosecutors did not find such information valuable and never used him to testify in any case.    As a result, the PCR trial court's decision denying relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## V.    **Ineffective Assistance of Appellate Counsel**

When the jury first returned with its verdict in petitioner's case, it believed it had found petitioner guilty of Counts One through Three and Seven through Nine, while finding him not guilty of Counts Four through Six.    However, a poll of the jury determined that the jurors had not actually reached a decision on Counts Four, Five, and Six.    The jurors mistakenly believed that only a finding of guilt required at least a 10-2 decision, and anything less resulted in an acquittal.    As a result, the jurors had only voted not guilty by a 7-5 margin as to Counts Four, Five, and Six.    Trial Transcript, pp. 1195-1201.    Consequently, the court directed them to return the following morning in order to continue their deliberations as to the undecided counts.    *Id* at 1207.

The following morning the jury found petitioner guilty on Counts Four, Five, and Six.    *Id* at 1212.    After the verdict had been reported, but before the court officially received it, petitioner

raised an issue outside the presence of the jury. According to petitioner, three jurors saw him the previous day in leg shackles and chains while being loaded into a van for transport to the jail. *Id* at 1215. He moved for a mistrial on the theory that the jury found him guilty because three jurors saw him shackled outside the courthouse. *Id* at 1216.

Petitioner had been representing himself since closing argument. Given the shackling issue, the court and petitioner agreed that it would be best to re-appoint counsel for the mistrial motion. *Id* at 1217-18. With appointed counsel representing him, the jury was brought back in and questioned about whether any of its members saw petitioner outside of the courtroom. Only two members of the jury saw petitioner outside of the courtroom, Jurors Gray and Thorne.

Juror Gray testified that he saw petitioner being put into the transport van, but did not see him restrained in any way. *Id* at 1225. He did not disclose what he saw to the other jurors, and the incident was not discussed at all among the jurors. *Id* at 1228. Importantly, Gray had already voted to convict petitioner on all counts, so his vote remained unchanged. *Id.*

Juror Thorne ended up changing his vote from not guilty to guilty as to Counts Four, Five, and Six. He testified that he glimpsed petitioner outside the courthouse and immediately turned around and walked away knowing that any contact with petitioner was

forbidden.  Like Gray, Thorne saw no restraints on petitioner and did not tell any other jurors that he saw petitioner outside of the courthouse.  *Id* at 1226, 1228.  In fact, when asked whether he "notice[d] anything about the way in which Mr. Calhoun was being moved back from the door to the van or anything like that," Thorne replied in the negative.  *Id.*  When asked by the trial judge whether his quick glimpse of petitioner outside of the courthouse impacted his decision, he testified that it did not.  *Id* at 1228.  The court then received the verdict, excused the jurors, and ultimately denied the motion for mistrial.  *Id* at 1269.

Petitioner now faults appellate counsel for failing to raise a due process claim during appeal that the jury was permitted to see him in shackles.  An appellate attorney "who files a merits brief need not (and should not) raise every non-frivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000).  Accordingly, a petitioner wishing to bring a *Strickland* claim based on his appellate attorney's failure to raise a particular claim must not only show that the claim had merit, but must also demonstrate that the omitted claim was "clearly stronger than issues that counsel did present."  *Id.*

In order to prevail on a shackling claim, a court must find: (1) the defendant was physically restrained in the presence of the jury; (2) the shackling was seen by the jury; and (3) the physical

restraint was not justified by state interests. *Ghent v. Woodford*, 279 F.3d 1121 (9th Cir. 2002).  If a petitioner makes such a showing, he must then demonstrate that he suffered prejudice as a result.  In order to prove actual prejudice, petitioner must show that the error "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abramson*, 507 U.S. 619, 637-38 (1993).

The PCR trial court made the following findings with respect to this claim:

> 42.  * * * One juror saw petitioner being escorted by deputies, however he did not see petitioner in restraints.  Furthermore, this juror indicated that this incident did not affect his verdict and was not discussed with the other jurors.  Another juror saw the transport vehicle, but did not see petitioner in custody.  His vote did not change and he did not mention this incident to the other jurors.  The issue of whether jurors saw petitioner in custody was raised on the record and it was determined that there was no prejudice. * * *.
>
> * * * * *
>
> 54.  Appellate counsel was not inadequate for failing to raise on appeal the issue of whether jurors viewed petitioner in custody.  This issue was thoroughly discussed at the time of trial and it was determined that none of the jurors noticed petitioner was in custody, and the two that viewed him with deputies informed the court that this did not affect their decision.  And because the trial court did not abuse its discretion in denying petitioner's motion for mistrial on this basis, the issue would not have succeeded on appeal.

Respondent's Exhibit 143, pp. 23, 25-26.

The record reveals that Jurors Gray and Thorne were very clear that they never saw petitioner in any physical restraints. Thus, petitioner could not have prevailed on a shackling claim, and appellate counsel was under no obligation to raise it. Accordingly, the PCR trial court's decision denying relief on this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

## RECOMMENDATIONS

For the reasons identified above, petitioner's requests to expand the record and for an evidentiary hearing should be DENIED, and the Petition for Writ of Habeas Corpus (docket #2) also should be DENIED. In addition, the court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due January 12, 2010. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

///

///

16 - FINDINGS AND RECOMMENDATIONS

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this <u>22nd</u> day of December, 2009.

<u>s/  Janice M. Stewart</u>
Janice M. Stewart
United States Magistrate Judge